# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                      CV 15-264 MCA/WPL
                                               CR 10-1374 MCA

JEREMIAH JACKSON,

       Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Jeremiah Jackson filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (CV Doc. 1; CR Doc. 190.)[1] Jackson advances five arguments in support of his request to retry the case with a change in venue, grant a mistrial, or offer him the option of a plea agreement. The United States responds that none of Jackson's arguments entitle him to any of the relief requested. (Doc. 196.) Despite requesting and being granted an extension of time to reply, Jackson did not file a reply. Since Jackson's claims may be resolved on the record alone, I have not conducted an evidentiary hearing. I recommend that the motion be denied.

### BACKGROUND

On April 6, 2010, Jackson robbed a bank in Albuquerque, New Mexico. *United States v. Jackson*, 736 F.3d 953, 955 (10th Cir. 2013). Jackson fled in a minivan. The police gave chase. During the police chase, Jackson's minivan crashed into another car. The crash killed the two women riding in the other car. Jackson later confessed. *Id.*

---

[1] All citations to "CV Doc." refer to documents filed in the civil case, CV 15-264 MCA/WPL. All citations to "CR Doc." refer to documents filed in the criminal case, CR 10-1374 MCA. Unless otherwise indicated, all references are to documents in the criminal case.

Jackson pleaded not guilty to a three-count indictment alleging bank robbery, in violation of 18 U.S.C. § 2113(a), and two counts of killing a person while attempting to avoid apprehension for bank robbery, in violation of 18 U.S.C. § 2113(e). (Doc. 22.) Jackson offered to plead guilty in exchange for a maximum term of incarceration ranging from twenty to fifty years. (Doc. 190 at 9.) The United States did not accept Jackson's offers and did not offer a plea agreement of its own. (*Id.*; Doc. 196 at 33.)

In rebuttal to defense counsel's closing argument, the prosecutor "suggested that . . . Jackson should 'man up' and 'accept responsibility' for his actions." *Jackson*, 736 F.3d at 957. A jury found Jackson guilty on all counts on August 24, 2011. (Doc. 121.) The trial court then vacated the bank robbery count as a lesser-included offense of § 2113(e). (Doc. 148.) On September 24, 2012, the court sentenced Jackson to life imprisonment on each count of killing a person while attempting to avoid apprehension for bank robbery, with the two terms to run concurrently. (Doc. 150.)

Jackson appealed, arguing that he should only have been charged with one count of bank robbery resulting in death and that the district erred by 1) denying his post-trial motion to vacate one of the two remaining counts because sentencing on both violates double jeopardy and the counts are multiplicitous, 2) denying his motion for mistrial after the prosecutor commented on Jackson's silence and election not to testify, and 3) failing to instruct the jury that a conviction under § 2113(e) requires a mens rea element. *Jackson*, 736 F.3d at 955.

The Tenth Circuit agreed that Jackson's sentence for two violations of § 2113(e) violated double jeopardy because they arose out of one car accident that happened while fleeing from one bank robbery. *Id.* at 956. The *Jackson* court then found that the prosecutor's statements during closing arguments were directed toward Jackson's lack of responsibility, rather than toward his

decision to remain silent and not testify. *Id.* at 957 (citing *United States v. Montgomery*, 802 F.2d 1225, 1227 (10th Cir. 1986)). Furthermore, the court found that any problem that could have arisen from the prosecutor's statements was cured by a limiting instruction from the trial court. *Id.* Finally, the Tenth Circuit agreed with other circuits and concluded that the mens rea requirements for § 2113(e) came from "'knowingly' committing the underlying bank robbery." *Id.* at 958 (citing *United States v. Parks*, 583 F.3d 923, 928-29 (6th Cir. 2009) (White, J. concurring; Cook, J. concurring in part and dissenting part); *United States v. Allen*, 247 F.3d 741, 782-83 (8th Cir. 2001) *judgment vacated on other grounds, Allen v. U.S.*, 536 U.S. 953 (2002); *United States v. Poindexter*, 44 F.3d 406, 408-09 (6th Cir. 1995)). The court affirmed in part and remanded the case to the trial court with instructions to resentence Jackson. *Id.* at 959.

At resentencing, the district court vacated one count of bank robbery resulting in death and resentenced Jackson to life imprisonment on the remaining count. (Doc. 178.)

Jackson, proceeding pro se, now brings five claims in support of his request for a new trial with a change of venue, a mistrial based on the prosecutor's comments during rebuttal to closing arguments, or the option to accept a plea agreement.

## STANDARD OF REVIEW

Because Jackson is a pro se litigant, I must construe his pleadings liberally and hold them to a less stringent standard than is required of a party represented by counsel. *See Weinbaum v. City of Las Cruces*, 541 F.3d 1017, 1029 (10th Cir. 2008) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Liberal construction requires courts to make some allowance for a pro se litigant's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935 F.2d at

1110) (alterations omitted). However, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id.*

DISCUSSION

Jackson brings five claims, each relating to either prosecutorial misconduct, ineffective assistance of counsel, or both. Jackson claims that he received constitutionally ineffective assistance of counsel because his counsel "fail[ed] to summons [sic] a key witness from the case" and "fail[ed] to argue and petition the separation between events that took place that resulted in [§] 2113(e) [violations], which should have been vehicular homicide, and bank robbery." (Doc. 190 at 6, 9.) And finally, Jackson argues both prosecutorial misconduct and ineffective assistance of counsel for not granting or obtaining a change in venue due to media coverage of the case.

The parties agree, and I concur, that Jackson timely filed this motion. 28 U.S.C. § 2255(f). I further find that Jackson's arguments are all without merit, and recommend that the Court deny Jackson's motion, dismiss this case with prejudice, and deny a certificate of appealability.

## I.    Evidentiary Hearing

A court must conduct a hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also United States v. Lopez*, 100 F.3d 113, 119 (10th Cir. 1996). Under this standard, "the petitioner bears the burden of 'alleging facts which, if proved, would entitle him to relief.'" *Hatch v. Oklahoma*, 58 F.3d 1447, 1457 (10th Cir. 1995) (citations omitted), *overruled on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001) (en banc). Accordingly, if the prisoner alleges facts, which, if believed, cannot be grounds for relief,

there is no need for a hearing. *See id.* Additionally, the petitioner's "allegations must be specific and particularized; conclusory allegations will not suffice to warrant a hearing." *Id.* (citations and internal punctuation omitted). If the claims relate to occurrences in the courtroom or evidence in the record, then the Court need not conduct a hearing. *Machibroda v. United States*, 368 U.S. 487, 494-95 (1962).

Because the record alone establishes that Jackson's § 2255 motion should be denied, I did not hold an evidentiary hearing in this matter.

## II.     Prosecutorial Misconduct

Jackson makes two arguments of pure prosecutorial misconduct. Jackson argues that the prosecutor behaved inappropriately and violated his Fifth Amendment right to remain silent by commenting on his silence at trial, and that the prosecutor impermissibly denied all of Jackson's attempts to enter a guilty plea and deprived him the two-point reduction in offense-level for taking responsibility for his actions. Both arguments fail as a matter of law.

### A.  Statements During Closing Argument

On direct appeal, Jackson argued that the prosecutor violated his Fifth Amendment rights during closing arguments by impermissibly commenting on his silence at trial. *Jackson*, 736 F.3d at 957. The Tenth Circuit determined that the prosecutor's statements "were not of the type that might influence a jury to decide a case based upon the failure of a defendant to testify" and that any problem created by the comments was cured by the court's limiting instruction. *Id.* Jackson advances the same argument here.

The law of the case doctrine states that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). The mandate rule, a corollary to the law of the

case doctrine, requires that a district court "comply strictly with the mandate rendered by the reviewing court." *Huffman v. Saul Holdings Ltd. P'ship*, 262 F. 3d 1128, 1132 (10th Cir. 2001). Exceptions exist. Exceptions to the mandate rule include: 1) a material change in controlling legal authority; 2) new material evidence that was previously unobtainable; and 3) blatant error in the previous decision that would result in manifest injustice if not corrected. *United States v. Webb*, 98 F.3d 585, 587 (10th Cir. 1996). Exceptions to the law of the case doctrine are substantially the same as those for the mandate rule. *See McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1035 (10th Cir. 2000).

Here, the Tenth Circuit has already determined that the prosecutor's statements during closing arguments did not violate Jackson's Fifth Amendment right to remain silent and that any error was cured by the district court's limiting instruction. *Jackson*, 736 F.3d at 957. Jackson has not produced any evidence that was previously unobtainable, pointed to any intervening change in legal authority, or made any attempt at demonstrating that the Tenth Circuit's decision was clearly erroneous and would work a manifest injustice.

Under the mandate rule and the law of the case doctrine, Jackson's claim that the prosecutor violated his Fifth Amendment rights during closing arguments necessarily fails because the Tenth Circuit has previously decided the issue. *See id.*

### B.  Denial of Jackson's Offers to Plea

Jackson next claims that he offered, multiple times, to plead guilty during trial, but the prosecutor rejected those offers. Jackson argues that the prosecutor's rejection of his offers to plead guilty deprived Jackson of a two-point reduction in the over-all offense level. *See* U.S. SENTENCING GUIDELINES MANUAL § 3E1.1(a) (U.S. SENTENCING COMM'N 2010). Jackson does not cite to any authority suggesting that the government is required to accept an offer to plea.

The United States responds that it acted without actual vindictiveness, never offered Jackson a plea deal, and that a defendant has no right to be offered a plea.

The Supreme Court recently reaffirmed that a defendant has "no right to be offered a plea." *Missouri v. Frye*, 132 S.Ct. 1399, 1410 (2012) (citing *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977); *Lafler v. Cooper*, 132 S.Ct. 1376, 1387 (2012). When a plea offer has not been made, a defendant cannot proceed under a theory of ineffective assistance of counsel with regard to plea negotiations. *See Frye*, 132 S.Ct. at 1410; *Lafler*, 132 S.Ct. at 1387.

Jackson makes no argument as to how refusing to offer a plea deal or to accept Jackson's offer to plea somehow amounts to prosecutorial misconduct. To the extent that Jackson intended to argue prosecutorial misconduct as it relates to the non-existent plea-bargaining process, Jackson would have to argue vindictive prosecution. A defendant alleging vindictive prosecution bears the burden of establishing that the prosecutor acted with actual vindictiveness or that there is a "realistic likelihood of vindictiveness which will give rise to a presumption of vindictiveness." *United States v. Sarracino*, 340 F.3d 1148, 1177 (10th Cir. 2003).

To establish actual vindictiveness, a defendant must show that: "'(1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus.'" *United States v. Rodella*, 59 F. Supp. 3d 1331, 1350 (D.N.M. 2014) (quoting *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001)). A claim of actual vindictiveness requires objective evidence that the prosecutor's actions were calculated to punish the defendant for asserting a legal right. *United States v. Gary*, 291 F.3d 30, 34 (D.C. Cir. 2002).

Jackson presents no basic allegations, much less evidence, that the prosecutor's actions were calculated to punish him for asserting a legal right. The prosecutor neither offered nor

accepted a proposed plea. Jackson did not have a right to be offered a plea deal. *Frye*, 132 S.Ct. at 1410. Accordingly, there is no objective evidence of actual vindictiveness in this case.

Vindictive prosecution arises presumptively when a defendant receives a harsher sentence or is subject to additional charges arising from the same events after exercising a procedural right that causes a complete retrial after having been tried and convicted. *See Blackledge v. Perry*, 417 U.S. 21, 27-28 (1974) (impermissible and presumptively vindictive prosecution to bring additional charges after a defendant exercises a statutory right to a trial de novo); *North Carolina v. Pearce*, 395 U.S. 711, 723-24 (1969) (presumptively vindictive when a defendant receives a harsher sentence on retrial after successfully attacking his first conviction), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989).

In the pretrial setting, the Supreme Court has held that no presumption of vindictive prosecution arises when a prosecutor carries through on a threat to bring additional charges, when the additional charges are justified by the evidence, when a defendant declines to plead guilty. *Bordenkircher v. Hayes*, 434 U.S. 357, 364-65 (1978). Finally, the Court declined to apply a presumption of vindictiveness to cases where the prosecutor brings additional charges against the defendant during the course of preparing the case. *United States v. Goodwin*, 457 U.S. 368, 381-84 (1982).

The Tenth Circuit has adopted a totality of the circumstances approach to determine whether there is a realistic probability that vindictive prosecution exists. *United States v. Raymer*, 941 F.2d 1031, 1040 (10th Cir. 1991). The defendant bears the burden of showing that there is a "realistic or reasonable likelihood of prosecutorial misconduct that would not have occurred but for hostility or punitive animus towards the defendant because he exercised his specific legal right." *Id.* at 1042 (internal quotation marks omitted). If the defendant satisfies this burden, the

government must then justify its prosecutorial decision or decisions based on legitimate, objective reasons. *Sarracino*, 340 F.3d at 1177.

Here, Jackson makes no showing that the prosecutor bore him any ill will or punitive animus. Jackson failed to establish any likelihood of prosecutorial misconduct, much less a realistic or reasonable likelihood that such alleged misconduct occurred because he exercised a specific legal right. There is no presumption of vindictiveness in this case.

Furthermore, Jackson's contention that he would have been entitled to a two-level reduction in the offense level is unavailing. Jackson could have pleaded guilty to the indictment straight-up, without a plea agreement, and received the benefit he now requests. Instead, Jackson went to trial. Additionally, § 2113(e) requires a sentence of "death or life imprisonment" when a death results from offenses under that section. Even if Jackson had pleaded guilty and received the two-level reduction in the offense level, his sentence would likely be the same.

Jackson's argument that the prosecutor acted with misconduct by rejecting his offers to plead to a term of years fails.

### III.   Ineffective Assistance of Counsel

Jackson makes two arguments about his counsel's alleged deficiencies. First, Jackson claims that he received constitutionally ineffective assistance of counsel because his counsel "fail[ed] to summons a key witness from the case." (Doc. 190 at 6.) Second, Jackson contends that counsel "fail[ed] to argue and petition the separation between events that took place that resulted in [§] 2113(e) [violations], which should have been vehicular homicide, and bank robbery." (*Id.* at 9.)

To succeed on an ineffective assistance of counsel claim, a defendant must show 1) that his lawyer's performance was deficient, i.e., below the level expected from a reasonably

competent attorney in criminal cases, and 2) that he suffered prejudice, meaning that there is a reasonable probability that the result would have been different but for his lawyer's unprofessional errors. *United States v. Cruz*, 774 F.3d 1278, 1284-85 (10th Cir. 2014) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 696 (1984)). "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

With regard to Jackson's first contention, he states simply that "trial counsel was ineffective for failing to summons a key witness from the case. A witness saw and spoke with . . . Defendant during the process of the violation 2113; which play plays a vital role within violation." (Doc. 190 at 5.) Determining which witnesses to call is a matter of trial strategy. *United States v. Barrett*, --- F.3d ---, 2015 WL 4926800, at *4 (10th Cir. 2015); *Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008). Even assuming that Jackson's defense attorney did decline to call a witness, Jackson does not present any evidence or additional information to suggest how this decision was unreasonably or prejudicial. The decision not to call a witness is within "the wide range of professionally competent assistance." *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) (quotation marks omitted). Jackson claims fails because he presented no evidence of any kind that his lawyer's performance on this point was deficient or that he suffered prejudice.

Jackson then argues that he received ineffective assistance of counsel because his defense attorney did not argue to the district court that Jackson was properly charged with vehicular homicide and bank robbery, rather than a violation of § 2113(e), because there was a "separation between events." (Doc. 190 at 8.) The Tenth Circuit implicitly resolved this argument on direct

appeal when it stated that "Mr. Jackson's . . . violation[] of § 2113(e) aris[es] from a single car accident in the course of a single bank robbery." *Jackson*, 736 F.3d at 956. Furthermore, the Supreme Court has cited § 2113(e) as an example of when Congress intended to use death or great bodily harm as an element defining an aggravated form of the crime, thereby establishing greater and lesser included offenses. *Jones v. United States*, 526 U.S. 227, 236 (1999); *see also Almendarez-Torres v. United States*, 523 U.S. 224, 231 (1998); *McMillan v. Pennsylvania*, 477 U.S. 79, 88 (1986). The Tenth Circuit previously determined that § 2113(e) "was enacted to combat the multitude of murders and kidnappings occurring during attempts by bank robbers to flee the scene of the crime," *United States v. Marx*, 485 F.2d 1179, 1186 (10th Cir. 1973), and that Congress intended "to create a separate, distinct and more serious offense for which an additional and more severe penalty was authorized," *Clark v. United States*, 281 F.2d 230, 233 (10th Cir. 1960).

In light of this legal backdrop, trial counsel's decision not to argue that Jackson should have been charged with two separate crimes—vehicular homicide and bank robbery—appears to fall within the "wide range of professionally competent assistance." *Byrd*, 645 F.3d at 1168. Jackson failed to cite any authority or make any factual argument suggesting that counsel's decision not to make this argument was anything other than reasonable. Additionally, Jackson made no showing that he suffered prejudice as a result. Jackson's claim that he received ineffective assistance of counsel on this point fails both prongs of the *Strickland* test.

## IV.    Change of Venue

Finally, Jackson argues prosecutorial misconduct and ineffective assistance of counsel on the basis that he was denied a pretrial change in venue. Jackson claims that media coverage of his case was pervasive and "could cause the jury to be bias[ed]." (Doc. 190 at 6.) Connected to

this argument, Jackson appears to contend some sort of racial animus on behalf of the jury because he is "Afro-American," the victims were Hispanic, Albuquerque is "a predominate[ly] Hispanic city," and a juror showed "public happiness" at being impaneled. (*Id.*) It is unclear from Jackson's conclusory statements how any of this amounts to prosecutorial misconduct. In an abundance of liberal construction, I consider Jackson's argument to be that he received ineffective assistance of counsel when his attorney did not move for a change in venue, which resulted in a denial of his Sixth Amendment right to an impartial jury.

The right to a jury trial guarantees to a criminal defendant a "fair trial by a panel of impartial . . . jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961); *Gardner v. Galetka*, 568 F.3d 862, 888 (10th Cir. 2009). Where pretrial publicity is "so pervasive and prejudicial that a court could not expect to find an unbiased jury pool in the community, it should presume prejudice, necessitating a venue change." *Gardner*, 568 F.3d at 888 (quotation omitted). A change of venue may also be required "where the effect of pretrial publicity manifested at jury selection is substantial enough to indicate the existence of prejudice within the jury pool." *Id.* A venire panel's exposure to news media coverage of a case does not presumptively deprive a defendant of due process or the right to an impartial jury. *Murphy v. Florida*, 421 U.S. 794, 799 (1975); *see also United States v. Abello-Silva*, 948 F.2d 1168, 1177 (10th Cir. 1991) ("Presumed prejudice is rarely invoked and only in extreme situations."), *abrogated on other grounds by United States v. Bagley*, 473 U.S. 667 (1985).

"[P]rejudice will only be presumed where publicity 'created either a circus atmosphere in the court room or a lynch mob mentality such that it would be impossible to receive a fair trial.'" *Goss v. Nelson*, 439 F.3d 621, 628 (10th Cir. 2006) (quoting *Hale v. Gibson*, 227 F.3d 1298, 1332 (10th Cir. 2000)). "Simply showing that all the potential jurors knew about the case and

that there was extensive pretrial publicity will not suffice to demonstrate that an irrepressibly hostile attitude pervaded the community." *Stafford v. Saffle*, 34 F.3d 1557, 1567 (10th Cir. 1994). "[T]he bar facing the defendant wishing to prove presumed prejudice from pretrial publicity is extremely high." *United States v. McVeigh*, 153 F.3d 1166, 1181 (10th Cir. 1999), *overruled on other grounds by Hooks v. Ward*, 184 F.3d 1206, 1227 (10th Cir. 1999).

Jackson failed to come forward with any evidence or factual contention suggesting bias prejudice based on pretrial publicity. Even if counsel's performance was deficient and he should have moved for a change in venue, Jackson failed to establish prejudice as a result of pretrial publicity.

As to the potential for racial bias by the jury, Jackson makes no reference to inadequate voir dire questioning by the court or his attorney. In fact, the venire panel consisted of 105 members and the court conducted voir dire for over seven hours before jury selection. (Doc. 119.) The Supreme Court has held that when a defendant is sentenced to death in the case of an interracial crime, and the court did not question the venire panel on racial prejudice, the death sentence must be vacated but the conviction stands. *Turner v. Murray*, 476 U.S. 28, 37 (1986). While it is unclear whether the court questioned the venire panel on racial prejudice, the issue is moot because the court conducted sentencing, rather than the jury. The Court has not found, nor has Jackson pointed out, any authority suggesting that the generic racial and ethnic composition of city warrants a new trial with change in venue under these circumstances.

Jackson again failed to adduce any evidence or factual contention suggesting that his counsel behaved in an unreasonable manner or that he suffered prejudice as a result of that behavior. Therefore, Jackson failed to establish either prong of *Strickland* and his claim for ineffective assistance of counsel fails.

CONCLUSION

Jackson failed to establish actual or presumptive vindictiveness on the part of the prosecutor. His claims of prosecutorial misconduct must fail. Additionally, Jackson failed to show that he suffered prejudice as a result of any of the alleged errors on behalf of counsel. Finally, Jackson failed to establish that he was entitled to a change of venue as a result of pretrial publicity or potential racial bias by the jury. Therefore, I conclude that Jackson failed to establish an ineffective assistance of counsel claim. For the reasons stated herein, I recommend that Jackson's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 190) be denied and this case be dismissed with prejudice. I further recommend that the Court deny a Certificate of Appealability. *See* 28 U.S.C. § 2253(c).

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

---

_William P. Lynch_
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.

14